JUDGE ZAGEL    MAGISTRATE JUDGE VALDEZ

**RECEIVED**
OCT 24 2013
MICHAEL T. MASON
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 13 CR 531 |
| v. | Violations: Title 18, United States Code, Section 1001(a)(2); Title 50, United States Code, Sections 1705(a) and (c); and Title 15, Code of Federal Regulations, Part 738 |
| NICHOLAS KAIGA | |

**FILED**
OCT 24 2013
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### COUNT ONE

The SPECIAL SEPTEMBER 2012 GRAND JURY charges:

1. At times material to this indictment:

    a. The International Emergency Economic Powers Act (IEEPA), Title 50, United States Code, Sections 1701-1707, granted the President of the United States the authority to deal with unusual or extraordinary threats to the national security, foreign policy, or economy of the United States.

    b. The Export Administration Act of 1979 (EAA), Title 50 Appendix, United States Code, Sections 2401-2420, regulated the export of goods, technology, and software from the United States. Pursuant to the EAA, the U.S. Department of Commerce promulgated the Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730-774, which contained restrictions on the export of goods outside of the United States.

    c. Although the EAA lapsed in August 2001, pursuant to his authority under IEEPA, the President issued Executive Order 13222 on or about August 17, 2001. In that order, the President declared a national emergency with respect to the unusual and extraordinary threat to the national security, foreign

policy, and economy of the United States in light of the EAA's expiration. Pursuant to IEEPA, the President, and subsequent Presidents, ordered that the Export Administration Regulations' provisions remain in full force and effect despite the expiration of the EAA.

        d.     In general, the Export Administration Regulations applied to goods, technology, and software that were "dual use" in nature, meaning that they had military and non-military applications. For various national security reasons, the Export Administration Regulations prohibited the export of certain goods and commodities to specific countries, absent permission from the U.S. Department of Commerce issued in the form of an export license. The U.S. Department of Commerce, Bureau of Industry and Security maintained the Commerce Control List, which consisted of general categories of goods that were controlled for export. Individual items within the Commerce Control List were identified by an Export Control Classification Number (ECCN).

        e.     The Commerce Control List contained an entry designated as ECCN 1C202.a. This entry pertained to aluminum tubing and cylinders with an outside diameter of more than 75 millimeters (2.95 inches) capable of an ultimate tensile strength of 460 megapascals.

        f.     7075 T6 aluminum tubing with an outside diameter of 4.125 inches and an ultimate tensile strength of 572 megapascals ("7075 Aluminum") was on the Commerce Control List and assigned ECCN 1C202.a.

  g. Goods classified ECCN 1C202.a, including 7075 Aluminum, were controlled for Nuclear Nonproliferation purposes.

  h. An export from the United States to Malaysia of Nuclear Nonproliferation controlled materials, including 7075 Aluminum, required a license issued by the U.S. Department of Commerce, Bureau of Industry and Security. An export from the United States to Belgium of Nuclear Nonproliferation controlled materials did not require a license.

  i. Industrial Metals and Commodities was a company located in Belgium.

  j. Defendant NICHOLAS KAIGA held various positions at Industrial Metals and Commodities including that of managing director.

  k. Company A, which maintained an office in Schaumburg, Illinois, was a distributor of steel and aluminum products.

  l. Company B was a company located in Malaysia.

  m. At no time did defendant NICHOLAS KAIGA, Industrial Metals and Commodities, Company A, or Company B apply for or obtain a license from the U.S. Department of Commerce, Bureau of Industry and Security to export, from the United States to Malaysia, goods listed under ECCN 1C202.a, including 7075 Aluminum.

2. Beginning no later than on or about November 26, 2009, and continuing until at least on or about February 7, 2012, at Schaumburg, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS KAIGA,

defendant herein, knowingly and willfully attempted to export, from the United States to Company B in Malaysia, goods, namely, 7075 Aluminum acquired from Company A, without first having obtained the required license from the U.S. Department of Commerce, Bureau of Industry and Security;

In violation of Title 50, United States Code, Sections 1705(a) and (c), and Title 15, Code of Federal Regulations, Part 738.

## COUNT TWO

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1. At times material to this indictment:

   a. Exporters of goods from the United States provided information to the U.S. Department of Commerce, Bureau of Industry and Security on a Statement by Ultimate Consignee and Purchaser form (also known as a Form BIS-711). The information on the Form BIS-711 was material to the U.S. Department of Commerce, Bureau of Industry and Security's determination of whether a proposed export required a license.

   b. On the Form BIS-711, individuals and entities who were the ultimate consignees and purchasers of the goods to be exported were required to provide and certify certain information, including the name and address of the ultimate consignee, and the intended disposition or use of the goods to be exported.

2. On or about August 29, 2011, at Schaumburg, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS KAIGA,

defendant herein, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the U.S. Department of Commerce, Bureau of Industry and Security, an agency within the executive branch of the Government of the United States, in that defendant represented in a Form BIS-711 that:

   a. A shipment 7075 T6 aluminum tubing ("7075 Aluminum") was to be resold to an ultimate consignee located in Belgium; and

    b. The 7075 Aluminum would be used or consumed in Belgium;

When in truth and fact, as defendant knew, these statements were false;

  In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT THREE

The SPECIAL SEPTEMBER 2012 GRAND JURY further charges:

1. At times material to this indictment:

   a. Exporters, shippers, and freight forwarders were required to file certain forms and declarations concerning the export of goods from the United States, including a Shipper's Export Declaration form. In general, those forms and declarations were filed electronically through the Automated Export System, which was administered by the U.S. Department of Homeland Security, Customs and Border Protection. Exporters, shippers, and freight forwarders were required to file such forms and declarations for every export of goods or technology from the United States which had a value of $2,500 or more, or which required an export license.

   b. Information concerning the identity and location of the ultimate consignee, and the value of the export were an essential and material part of the Shipper's Export Declaration form. Such information was used by U.S. Department of Homeland Security, Customs and Border Protection, and the U.S. Department of Commerce, Bureau of Industry and Security to, among other things, determine whether the goods could be exported without any specific authorization or license from the United States Government.

   c. Freight Forwarder A was a freight forwarding company located in Eden Prairie, Minnesota.

7

2. On or about November 17, 2011, at Schaumburg, in the Northern District of Illinois, Eastern Division, and elsewhere,

NICHOLAS KAIGA,

defendant herein, knowingly and willfully made, and caused to be made, materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the of U.S. Department of Homeland Security, Customs and Border Protection, and the U.S. Department of Commerce, Bureau of Industry and Security, agencies within the executive branch of the Government of the United States, in that defendant, stated and represented, and caused to be stated and represented, in a Shipper's Export Declaration generated by information submitted by Freight Forwarder A to the Automated Export System, that:

    a. The ultimate consignee for a shipment 7075 T6 aluminum tubing ("7075 Aluminum") was located in Belgium;

    b. The country of ultimate destination for the 7075 Aluminum was Belgium; and

    c. The value of the 7075 Aluminum was $10,089;

When in truth and fact, as defendant knew, these statements were false;

In violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY