IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.   13-CR-531 |
| v. ) | |
| ) | Judge James B. Zagel |
| NICHOLAS KAIGA ) | |

### NICHOLAS KAIGA'S SENTENCING MEMORANDUM

NICHOLAS KAIGA, by the FEDERAL DEFENDER PROGRAM and its attorney DANIEL P. McLAUGHLIN, respectfully requests that this Court impose a sentence of 24 months in custody of the Bureau of Prisons, because such a sentence is sufficient, but not greater than necessary, to fulfill the goals of sentencing enumerated in 18 U.S.C. § 3553(a).  In support of this request, Mr. Kaiga further states:

    I.    **Introduction**

The parties agree with the manner in which the guidelines apply to Mr. Kaiga's case.  The total adjusted offense level is 23 and Mr. Kaiga, who has no criminal history, is properly classified within criminal history category I.  Dckt. #45 at 6-7; PSR at ¶¶ 22-31, 38.  The combination of these factors yields an advisory range of 46 to 57 months.  However, because of Mr. Kaiga's cooperation following his arrest, the government will make a motion under § 5K1.1 and ask that the Court impose a sentence equal to 66% of the low-end of the applicable range.  Dckt. #45 at 9-10; PSR at ¶ 12. In other words, the government will ask the Court to sentence Mr. Kaiga to 30 months in prison.

Under the terms of his plea agreement Mr. Kaiga remains free to recommend any sentence. While Mr. Kaiga joins in asking the Court to grant the government's §5K1.1 motion, he respectfully requests that the Court consider the difficult circumstances of his pre-sentencing confinement and impose a custodial sentence of 24 months.

> II. **Mr. Kaiga's requested sentence accounts for the fact that his time in custody has been significantly more difficult than the typical pre-sentencing detainee's.**

Mr. Kaiga was taken into federal custody in New York on June 25, 2013. One week later, he was moved to the McHenry County Jail in Woodstock, Illinois. Mr. Kaiga has no family or friends in the Northern District of Illinois, or anywhere nearby. He has two siblings who live on the east coast, and the remainder of his family is in Europe and Africa. PSR at ¶¶ 42-43. Between July 2, 2013 and February 17, 2015 (last week), Mr. Kaiga was detained at two county jails: McHenry County Jail and Livingston County Jail.

During the time Mr. Kaiga has been in custody, he has not had any contact visits with any family or friends. Counsel is the only person with whom Mr. Kaiga has had a face-to-face meeting. Mr. Kaiga's sister, Elizabeth, flew to Chicago on one occasion, rented a car, and drove to McHenry County. She was able to speak to Mr. Kaiga over a telephone while looking at his image on a small television screen. The visit was limited to 30 minutes. Unlike almost every defendant who is detained in the Northern District of Illinois, Mr. Kaiga has no connection to the Chicago area. As a result, there is no one with whom he can visit in-person.

The telephone offered some limited, albeit prohibitively expensive, relief. Mr. Kaiga was able to talk to his sister on occasion. However, he has not been able to speak to his parents since the time he was taken into custody, because neither of the county jails in which he has been detained offers the ability to make international calls. PSR at ¶42.

In addition to being isolated, Mr. Kaiga struggled to review the evidence in his case. Neither county jail has an adequate law library. In Mr. Kaiga's case, there was a great deal of evidence that was stored on an external hard drive. The jails lacked adequate computer resources to allow Mr. Kaiga to fully review the materials in counsel's possession. The combination of serving a lengthy period of time in custody in a foreign country, with no visitors or support, and the struggles related to reviewing the evidence, created significant anxiety. Mr. Kaiga's time in custody has been appreciably more difficult than it is for the typical detained defendant in this district.

Finally, the Court should consider the fact that inmates without immigration status face more severe restrictions and are denied benefits available to other inmates while serving their sentences. Mr. Kaiga will not be eligible for release to a halfway house, which frequently allows inmates to spend the last months of their sentences in less-restrictive, community settings. In addition, Mr. Kaiga is categorically excluded from minimum security facilities. At the conclusion of his sentence he will be taken into administrative custody to be deported. It is impossible to know how long he will be detained before he is sent to Belgium. What

is known, however, is that his time in administrative custody will be spent in a prison-like setting.

In *United States v. Spano,* the Seventh Circuit reasoned that sentencing courts had the discretion to take the conditions of confinement into consideration (though they are not required to do so) when imposing sentence. 476 F.3d 476, 479 (7th Cir. 2007). The Court can and should consider that Mr. Kaiga's time in custody has been and will continue to be harsher than the typical inmate's and impose the requested sentence of 24 months to reflect these differences. The severity of a sentence has two dimensions: length and harshness of conditions. *See, e.g. Spano*, 476 F.3d at 479; *United States v. Navarro-Diaz*, 420 F.3d 581, 588 (6th Cir. 2005). Here, the harshness of Mr. Kaiga's pre-sentencing confinement, combined with the uncertainty and continued difficulties of the period of confinement to come, auger in favor of the requested sentence of 24 months' incarceration.

### III. Conclusion

Mr. Kaiga's request is for a relatively modest variance from the sentence requested by the government—24 months rather than 30 months. The government's request is based upon the value of Mr. Kaiga's cooperation, and it provides an appropriate reduction to reward the significant information provided by Mr. Kaiga. However, neither the guidelines nor the government's request account for the significance of Mr. Kaiga's isolation in a foreign jail, without the means to communicate with his parents, for a lengthy period of time. While many non-

4

citizens find themselves detained while facing charges in this district, most have family and friends in the area to visit and provide support. The unique difficulties of Mr. Kaiga's pre-sentencing detention, combined with other factors related to his personal history and characteristics that will be presented to the Court at next week's hearing, provide ample support for the requested sentence of 24 months in custody.

        Respectfully submitted,

        FEDERAL DEFENDER PROGRAM
        Carol A. Brook
        Executive Director

        By: s/ *Daniel P. McLaughlin*
            Daniel P. McLaughlin
            Counsel for Nicholas Kaiga

DANIEL P. MCLAUGHLIN
FEDERAL DEFENDER PROGRAM
55 East Monroe St., Suite 2800
Chicago, IL 60603
(312) 621-8300

## **CERTIFICATE OF SERVICE**

The undersigned, Daniel P. McLaughlin, an attorney with the Federal Defender Program, hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

**NICHOLAS KAIGA'S SENTENCING MEMORANDUM**

was served pursuant to the District Court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand-delivery on February 26, 2015, to counsel/parties that are non-ECF filers.

By:   s/ *Daniel P. McLaughlin*
DANIEL P. MCLAUGHLIN
FEDERAL DEFENDER PROGRAM
55 E. Monroe St., Suite 2800
Chicago, Illinois 60603
(312) 621-8300